[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter first came to the Court pursuant to summons and complaint dated October 29, 1997 and returnable November 18, 1997, in which complaint the Plaintiff prayed for a dissolution of marriage, alimony, custody of minor children, a property settlement and such other relief as the Court deemed fair and equitable.
Automatic orders accompanied the complaint.
The Defendant appeared by counsel on November 12, 1997 and filed various motions and an answer and a cross complaint all dated November 7, 1997. In the cross complaint the Defendant claimed a dissolution of marriage, joint custody of minor children, support, alimony, an assignment of the Plaintiff's interest in the home premises at 24 Martin Court, assignment of pension and retirement benefits, possession of a certain motor vehicle, an allowance to prosecute and other relief.
A stipulation between the parties dated January 12, 1998 was approved by the Court, Parker, J., pertaining to temporary custody and support.
The Plaintiff and the Defendant, with their respective counsel and witnesses, appeared before the court on April 16, 1999 and were heard.
The Court makes the following findings of fact.
The Plaintiff and the Defendant, whose maiden name was Michelle T. Contillo, were united in marriage on April 2, 1988 at Uncasville.
Both parties have resided in this State for more than 12 months prior to the date of the complaint.
The parties have two minor children issue of their marriage, Sarah Anne Lemieux, born August 30, 1990, and Kristen M. Lemieux, CT Page 4189 born December 14, 1996.
The parties are not the recipients of welfare or assistance from the State.
The marriage has broken down irretrievably with no prospect of reconciliation.
The Plaintiff is self-employed in the floor covering business and has been so engaged over the last 14 years.
Plaintiff has one full-time employee and two part-time employees.
At an earlier point in time, the Defendant acted as the Plaintiff's bookkeeper on a part-time, no compensation basis.
The Defendant, during a portion of the marriage, had returned to school seeking a degree in Geology.
The return to school was prompted by the Plaintiff's mother.
The Defendant is presently employed as a secretary at an area law firm.
The home and residence of the parties at 24 Martin Court was formerly owned by the Defendant's parents and when the parties acquired the residence from the Defendant's parents, the Contillo's gave their daughter and son-in-law $20,000.00 by way of equity gifts and, in addition, reduced the selling price of the home.
In addition to the foregoing, the Plaintiff's mother made $10,000.00 available to the parties to cover closing costs and home improvements.
The balance of the purchase price was secured by a mortgage to National Mortgage Corporation.
The Plaintiff has made numerous improvements to the residence including a new kitchen floor, renovation of the bathroom, substantial electrical work, carpentry work and new garage floor.
The residence of the parties is presently listed for sale. CT Page 4190
The monthly mortgage payments are $1,046.00 and the mortgage balance is $88,700.00.
The residence is heated by electric heat.
The Plaintiff recently, to secure funds to keep obligations current and to pay for motorcycle purchases, sold his weapon collection for $2,200.00, a coin collection for $500.00, a glassware collection for $300.00 and fishing equipment for $500.00.
The Defendant on or about September 17, 1997 withdrew $2,700.00 from a joint savings account to provide a retainer for legal services.
The Plaintiff, pursuant to a pendente lite order, has been paying $100.00 weekly as a support order on the two children.
In 1990, the Plaintiff was injured in a car accident as a passenger.
Plaintiff received a settlement of approximately $30,000.00 after attorney's fees.
The proceeds went to purchase a boat for $7,500.00, $11,000.00 to purchase his work van and sundry other items including substantial medical bills.
The boat was subsequently sold for $1,000.00.
The Plaintiff still has aches and pains from the injuries he sustained in the 1990 accident and takes medication incident thereto.
Plaintiff presently has no medical coverage being self-employed.
It is the Plaintiff's claim that the Defendant has been unfaithful in the marital relationship and that he listened on the phone to an admission thereto, but the Defendant represents that she and a girlfriend knew he was listening and that the conversation was a hoax.
The Plaintiff has had suicidal thoughts since September 17, 1997 and kept in touch with the "hot line" where guidance and CT Page 4191 help is provided over the phone.
The Defendant represents that her relationship with Wayne Nogland was on a friendship basis only.
The Plaintiff has attended and completed a ten-week anger management course.
The Plaintiff drank heavily for a year and used some prescription substances.
Since January 1999 the Plaintiff has had a girlfriend residing with him in the Martin Court residence.
The Defendant, for some considerable time, has resided with her parents with the children.
The Plaintiff testified that his annual net income was approximately $20,000.00, gross business income from his floor covering business $70,000.00. Plaintiff claimed substantial business expenses.
Plaintiff's full-time employee, Mr. Congdon, is paid by check; his part-time workers, Stouffer and Manning, are paid in cash.
In 1998 the Plaintiff did flooring jobs for Mystic Tile 
Covering and Maxim Industries and Clough Floor Covering.
At one time, the Plaintiff won a diamond in a pool game, he subsequently sold it for $3,000.00.
One Christina Romantini resided with the Plaintiff after the parties separated.
At one time the Defendant had a daycare license for daycare at the Martin Court residence, but lost the license due to the Plaintiff's conduct with a firearm occurring on September 17, 1997. The Defendant dialed 911 when the Plaintiff threatened himself and the Defendant with the weapon and the police arrived.
The purchase price of the Martin Court premises, after the gifts by the Defendant's parents, was $95,000.00.
The Plaintiff is age 32, and says he enjoys fair health. CT Page 4192
Plaintiff's education extended through completing high school.
The minor child Sarah is now age 8 and attends the third grade.
The child Kristen is age 2.
Leonard G. Contillo, Jr. is the Defendant's father.
Prior to conveying the Martin Court residence to the Plaintiff and his daughter, he had the premises appraised. Mr. Contillo used assets of his own to help the parties in addition to borrowing to finance a new home for himself and his wife.
Mr. Contillo was motivated in helping his daughter to see that she and the children had a decent home in which to live.
Mr. Contillo, in 1998, took the two children, Sarah and Kristen, as tax exemptions, mindful of the financial help and assistance he has provided to them.
The date of sale of the Martin Court premises was July 2, 1996; Contillo to Lemieux.
Mr. Contillo's appraisal of the property before the conveyance valued it at $129,000.00.
The Defendant presently pays the Contillo's $50.00 weekly for food for herself and the children.
The Defendant and the two children have resided in the Contillo home for the last two years.
Mr. Contillo is employed, his wife is a homemaker and cares for the children while the Defendant works. The Defendant's brother is also a part of the Contillo household. Mr. Contillo has also assisted his daughter with down payments on motor vehicles.
The Defendant is very concerned regarding the physical condition of the Martin Court property in order that it be well maintained until sold.
The Defendant has held her present position as a secretary at CT Page 4193 a law firm for one year.
Earlier, the Defendant worked in a restaurant, did cleaning work in condominiums and also a tool and die machine shop.
The Defendant at one time also was employed by her parent mother who conducted a daycare center.
The Defendant has two associate degrees in science.
In September 1996, the Defendant started working on a Bachelor's degree, but had to drop out in February of 1998 to support herself and the children.
The Defendant became a licensed daycare provider but the license was subsequently revoked due to conduct of the Plaintiff when he threatened suicide with a weapon and threatened her at the same time in the presence of the children.
After the events with the weapon, the police notified DCF, which then caused the loss of license.
After the event with the firearm, the Defendant returned once to the home in the hope of reconciliation, but to no avail.
After the birth of Kristen, the Defendant suffered from postpartum depression.
At the Plaintiff's insistence, the Defendant, after Kristen's birth, underwent a tubal ligation and she is now sterile although she had hoped for other children.
The child Sarah is engaged in counseling and therapy in reaction to the marital breakup and parental conflict.
The Plaintiff admitted his relationship with Christina to the Defendant, but claimed it only occurred after November 1998.
The Defendant claims that the Plaintiff has been arrested for certain offenses, but no exhibit establishing that claim was offered.
The Defendant claimed that the Plaintiff humiliated her family by his conduct and was never home for a proper family life. CT Page 4194
The Defendant is age 30, her health is good.
The child Sarah has been diagnosed as having Attention Deficit Syndrome.
From the exhibits, the Court makes the following findings.
Defendant's Exhibit 15 is a collection of photographs of the Martin Court home and residence, there is some disarray but no indication of damage or destruction.
Defendant's Exhibit 4 depicts the 1999 Harley Davidson motorcycle of the
Plaintiff purchased on August 26, 1998 for a substantial sum.
See Defendant's Exhibit 14 for the listing agreement for the Martin Court property exposed for sale at $123,900.00.
See Defendant's Exhibit 18 for photographs of the Searay power boat purchased for $7,500.00 and sold for $1,000.00 after being damaged by running aground.
See Defendant's Exhibit 19, the Defendant's 1998 federal income tax return showing her adjusted gross income of $14,277.60.
From the Defendant's financial affidavit the Court finds the Defendant's weekly gross income from employment is $320.00, weekly net $267.50.
Pendente lite support order, $100.00 weekly.
Weekly expenses, mindful that the Defendant's parents are providing her presently with a home, $255.43.
Defendant's debt of $35,199.50 primarily due to vehicle loans.
The Defendant values the home at $124,000.00 with an approximate total equity of $39,000.00.
Defendant values her 1994 Toyota motor vehicle at $10,900.00, loan balance $10,000.00. CT Page 4195
Defendant values her furnishings and jewelry at $3,000.00 and has $725.00 in the bank.
See Defendant's Exhibit 17 verifying the Plaintiff's sale of the aforementioned diamond ring for $3,000.00.
See Defendant's Exhibit 12 a report and evaluation from the school which Sarah attends indicating that Sarah is at risk emotionally due to conflict between her parents and the pending divorce.
See Defendant's Exhibit 11 reflecting the substantial payments the Plaintiff is making on three motorcycles, $260.52 monthly to Harley Davidson, $284.50 to Progressive, $241.00 to Allstate.
See Defendant's Exhibit 7, bill of sale from N.E. Cycleworks Inc., dated March 9, 1998 concerning the Plaintiff's purchase of a 1998 Kawasaki motorcycle for a total price of $10,489.00.
See Defendant's Exhibit 5 indicating the finance charge on the Kawasaki motorcycle of $5,073.68 making the total payment $16,663.50, dated March 11, 1998, annual percentage rate 12%.
See Defendant's Exhibit 6 reflecting purchase of a 1999 Harley Davidson motorcycle for $13,121.00 of which $11,121.00 was financed.
The Plaintiff's financial affidavit reflects the following.
Weekly gross earnings from self-employment $461.54, weekly net $362.60.
Weekly expenses claimed are $796.19, which includes the mortgage payment.
Debt shown totals $10,800.00. The Plaintiff values the residence at $130,000.00.
Plaintiff shows a 1992 Ford van valued at $5,200.00 free and clear, a 1999 Harley Davidson motorcycle, which he values at $12,000.00 with a minus equity, personal property valued at $6,000.00 and $700.00 in an IRA. CT Page 4196
The Jeep Grand Cherokee is a leased vehicle. The lease allegedly expired on January 1, 1991. Both parties are signatories on the lease.
 Discussion
This is a marriage of 11 years, the first for both parties, with two small children ages 8 and 2.
Because the Defendant found it intolerable to remain in the marital residence, she has resided with her parents with the two children. The parties, in the Court's opinion, certainly owe the Contillo's a debt of gratitude for their understanding and help in providing a stable home for the children. The Court is satisfied that the Defendant has not strayed from the fold with Wayne Nogland, but nevertheless condemns the hoax which resulted in the Plaintiff's resort to threats with a firearm.
The Plaintiff's current residence with Christina Romantini, the Court feels, should have been postponed at least until after the parties' marriage was dissolved.
The Court is troubled by the emotional state of the child Sarah and her exposure to the tumult between the parties.
The Court is inclined to the view that the large sums and attendant financial burdens generated by the motorcycle purchases could have been better spent on the family.
 The Law
The Court has considered all of the statutes which apply in matters of this nature which include without limitations C.G.S. §§ 46b-40 et seq., 46b-56, 46b-56a, 56b-58 and 46b-62.
The Court has considered all of the applicable case law that govern the matter.
The Court has considered the testimony of the parties, their candor or lack thereof and all exhibits and the arguments of counsel.
In considering the issue of alimony, the Court has considered the length of the marriage, the cause of the dissolution, the CT Page 4197 age, health, station, occupation, employability, estate and needs of the parties.
The Court has considered the standards of living of the parties.
The Court enters the following orders.
The Plaintiff and the Defendant shall share joint legal custody of the minor children Sarah and Kristen with the Defendant mother being the primary custodial parent. The parties shall share and provide to each other medical and school information concerning the children as necessary.
Reasonable rights of visitation to the Plaintiff father.
The Plaintiff shall pay to the Defendant the sum of $125.00 weekly as total support for the two minor children.
The Plaintiff shall maintain medical and dental coverage for the minor children.
Any uncovered medical or dental expenses shall be equally apportioned between the parties. C.G.S. § 46b-84d shall apply.
The Plaintiff shall pay the Defendant the sum of $10.00 weekly as alimony for a period of five years.
The Court is mindful of the Defendant's request for only $1.00 per year but feels that when the Defendant leaves her parents' home for a place of her own with the children that some token amount is appropriate to help her along.
The parties have divided their personal property to the satisfaction of each except that the Defendant shall be entitled to have the following: 1 air conditioner, 1 table with leaf and four chairs, bedroom furniture, computer desk, patio furniture, two Christmas trees.
The real property at 24 Martin Court, which is currently exposed for sale, shall continue in that status until sold.
The Plaintiff shall be responsible for paying the mortgage, taxes and insurance during his occupancy of the premises until sale. CT Page 4198
In the event that the Plaintiff vacates the premises before sale, he shall immediately notify the Defendant who shall then be immediately entitled to possession, and the Defendant would then pay the mortgage, taxes and insurance until sale.
The premises are to be kept and maintained in a neat and clean condition without damage or vandalism until date of sale.
After the sale of the premises at 24 Martin Court, the Defendant's parents can hardly be expected to assist with the purchase of another home for the Defendant and the children and therefore the Defendant shall be entitled to the net proceeds from the sale after payment of all encumbrances and expenses.
The Plaintiff shall be entitled to retain his modest IRA.
Each party shall be entitled to retain the motor vehicle or vehicles in their respective names and be responsible for any indebtedness thereon. The Plaintiff may retain the motorcycles.
The Plaintiff shall be responsible for the payments on the leased Jeep motor vehicle and may be entitled to the possession thereof and indemnify and hold harmless the Defendant therefrom.
The Defendant may retain the few shares of Pfizer stock shown on her financial affidavit.
The Plaintiff may retain any remaining coin collection, his fishing equipment and gear and all of his personal effects, personal jewelry and items of like nature. The Plaintiff may retain any boat which he presently owns.
Each party shall be responsible for any debt shown on their financial affidavit.
The Court finds that there is an arrearage of support to the amount of $300.00 and that the same shall be discharged at the rate of $5.00 weekly until liquidated.
Each party shall be responsible for their respective counsel fees.
The Defendant made no request for resumption of maiden name. CT Page 4199
The marriage is dissolved on the grounds of irretrievable breakdown and the parties are declared to be single and unmarried, C.G.S. § 46b-40c.
Austin, JTR